Good afternoon, ladies and gentlemen. This is the time for our ongoing consideration of the case of Membreno v. Gonzales. The Court has considered the briefs, and you have been each given 30 minutes per side total, which is as much time as we give the most complex cases involving the most intricate issues of federal jurisdiction. And this does not contain it. So with that in mind, we advise that you don't need to feel compelled to use all of your time. And we understand you're both ready to present arguments before the petitioner may proceed. Good afternoon, Your Honor. My name is Sean Paz, with the help of Mr. Membreno. Mrs. Membreno was a 47-year-old immigrant, long-time legal permanent resident. She was ordered removed in 1993 for a conviction of assault with a deadly weapon. The Immigration Court at that time considered her offense was a crime involving more than one person. However, the Immigration Court did not allow Mrs. Membreno to submit evidence as to whether or not categorically this was a crime involving moral turpitude. Moreover, the Immigration Court failed to allow Mrs. Membreno to apply for the petty-fence exception. Her conviction at the state level was, in California, is considered a wobbler. It could have been punished either as a felony or a misdemeanor. The California court elected to punish it as a misdemeanor. Mrs. Membreno was given 180 days punishment in county jail, as well as three years of summer probation. Was a judgment entered? The judgment wasn't entered. The sentence was suspended, and she was found adjudicated guilty, pled guilty to the offense. There was 180 days punishment and three years probation. Was the imposition of sentence suspended? Yes, Your Honor. That's different than actually sentencing. Yes. I was key to the point that the criminal court punished Mrs. Membreno, and I used that language specifically. They punished Membreno by imposing three years of probation. And as a condition of probation, they gave 180 days in county jail. That is important because under 17A, it defines what crimes are felonies, misdemeanors, or infractions. And because once the imposition of punishment was elected, once the criminal court elected to punish by three years probation and 180 days, it became by definition a misdemeanor offense. And because it's a misdemeanor offense, Mrs. Membreno should have been allowed to apply for the petty offense exception. Counsel, do we use the judgment in a case of suspended imposition, or do we use this phrase in the statute, or of which the acts the alien admits having committed constitute the essential elements? I believe we refer to the statute. But we do use what the actual conduct was and how it would fit the statute that defines the crime. Well, if we're referring to whether or not this crime constituted a crime involving moral turpitude, that we look at assault with a deadly weapon, the intent element required is that intent only necessarily for battery. And the intent being only necessary for battery, it only requires unlawful touching. And whether or not that constitutes a crime involving moral turpitude, it falls short of that because a crime involving moral turpitude normally requires an element of fraud or some malicious intent, whereupon the intent required for a battery is generally unlawful touching. So there are circumstances where someone can be convicted of assault with a deadly weapon and that not be a crime involving moral turpitude. What I'm getting at is a little different. It's whether she could qualify for the petty offense exception in any event. I believe fall from 17, the entire statutory scheme of 17, including 17A, 17B, 17B1 and 3, that her crime is essentially a misdemeanor. But only after the judge decides to drop it to a wobbler, decides to drop the wobbler to a misdemeanor. In terms of the conduct, basically her husband and another guy are having a fist fight. She pulls out a gun and starts shooting at people, or at one guy. Yes. And that conduct would constitute the elements of a crime for which the maximum penalty was more than a year, or was a year or more. In this instance, with California Penal Code 245A2, this is a crime that was punishable either as a felony or a misdemeanor. The judge in this instance elected to punish it as a misdemeanor. So this was essentially a wobbler offense, whereupon, under the discretion of the criminal court, upon having the opportunity to view the record in front of it, elected to punish this offense as a misdemeanor. Is it necessary for the judge at a later date, say when the summary probationary period is concluded, to then on the record state or file a document that states that this offense is a misdemeanor? Or is it automatically a misdemeanor based on the sentence imposed at the time the sentence was first imposed? An offense which can be punished as a felony or misdemeanor can become a misdemeanor under several circumstances. One is if the punishment that's imposed, if probation is given, suspended sentence, and then a punishment imposed other than state imprisonment, if there's violation of the probation, it becomes a misdemeanor for all purposes. Another method in which the offense can become a misdemeanor is if after the punishment is imposed, after probation is imposed, that the defendant can go back into criminal court upon a 17B motion and move to have the court's declarative misdemeanor, but that is not necessarily so. Under 17B-1, what is required is that a punishment other than imprisonment in a state prison is a misdemeanor. Under 17B-3, there are two options under 17B-3. Under 17B-3, it states that if the defendant moves the court to declare this matter a misdemeanor, the court can so do so in its discretion. Alternatively, 17B-3 states that whereupon there's a suspended sentence, probation imposed, and there is no punishment in state prison, it becomes a misdemeanor. So 17B-3, there's an or between the language. The first part of the language states that under these circumstances, circumstances similar to those circumstances in which Membrano was under, that would be a misdemeanor. Following the or in the statutory language is upon a motion or upon the declaration of the criminal court to declare it a misdemeanor. So there are several ways in which a wobbler offense, offense that's punishable either or, can become a misdemeanor. Kennedy. Counsel, you said that this was punished as a misdemeanor. I'm reading from the sentence and it says for Counsel 1, the felony was placed, the defendant was placed on capital. Felony. Probation. Probation. Why do you say that's a misdemeanor sentence? Your Honor, under Garcia-Lopez, where a matter is, once the accusation is made, the complaint is made, and the matter on the docket says a felony, that is not dispositive as to whether or not it is actually a felony or misdemeanor. What happens is that we look to the actual punishment imposed and if there's been a violation of any probation. Where at the punishment is the punishment that meets the definition of 17A. 17A clearly states that punishment up in county jail unless it is a misdemeanor. Punishment in state prison or a death penalty is a felony. If she violated probation, the judge could have given her two, three, or four. That is so, Your Honor. However, that's exactly correct. But she hadn't done it. He hadn't sentenced her yet. Your Honor, I believe the critical language is punishment as opposed to sentencing. There is, in case Fierra v. Ashcroft, which is analogous to ours, that defendant was given a suspended sentence, was provided probation as well as four months in county jail. There was no violation of probation in that instance. And this court deemed that to be a misdemeanor. When we look to Robinson, United States v. Robinson, there was also a suspended sentence. There was also three years probation. And there was nine months in county jail. But the distinction in Robinson, in our case as well as in Fierra, is that in Robinson the probation was revoked. During the probationary period, the defendant violated the terms of probation and probation was revoked. Therein, the criminal courts could have let it to punish that person as a misdemeanor or as a felon. It was revoked. Counsel, how do you distinguish our language in Robinson that talks about the judgment as being the critical factor to determine whether or not it was a misdemeanor or a felon? Language judgment of conviction is contained in Robinson as well as United States v. Quell. But that language is nowhere contained in the statute in 17A and 17B. So you don't rule Robinson because it's wrong? I believe on the issue of whether or not in order for a matter to be deemed a misdemeanor that requires, quote, unquote, judgment of conviction, I believe that is incorrect because the statute does not prescribe a judgment of conviction. So is the answer to my question yes, you should overrule it, it's wrong? Yes, Your Honor. But let me understand your argument on the California Code 17. You're saying that under 17B1, a judgment is required, correct? That's one way to get a misdemeanor. Exactly. That's not. But you're saying that your client falls under B3? I believe on 17B1, when it says after judgment, that refers to when the criminal court judge elects the punishment. There's no reference to any judgment apart from imposing the probation, suspending the sentence is required. But isn't the word judgment a term of art in the criminal law within the California system? Yes, Your Honor. What a judgment refers to, any time an individual's interests are affected by a decision of a criminal court judge, any time an individual can appeal from a decision of a criminal court judge, that is, in fact, a judgment. At the instance in which someone is given probation and a suspended sentence and a punishment of county jail, that affects that person's interests, and upon that, that person can appeal from that decision. So following the term of art, it is a judgment. Once the criminal court judge has elected to impose this punishment, that is a judgment on which this defendant can appeal. Now, if we were to disagree with you on that interpretation of a judgment, is it your position that your client qualifies under B3 also? Yes, Your Honor. And I'm having some trouble understanding that because it seems to me the last phrase, the court declares the offense to be a misdemeanor, doesn't make any sense unless you can also join it with the first phrase as to when a court grants probation. So maybe I'm misunderstanding your statutory argument. You could elaborate on that. Yes, Your Honor. Under 17B3, 17B3 is bifurcated by the or in 17B3. Okay. That's what I thought you meant. So let me ask you this question. Yes, Your Honor. If it's bifurcated, how would the first phrase make any sense? Because it would read, when the court grants probation to a defendant without imposition of sentence and at the time of granting probation, period. That would be the first sentence? Yes, Your Honor. But that makes no sense because it says, and at the time of granting probation, but it leaves you dangling because it then hooks up with the last part of the sentence. I believe if we look at the statute in its entirety, if we look at the entirety of 17, including 17A and B, it makes sense, in that when the court grants probation to a defendant without the imposition of sentence and at the time of granting probation, then we go back to 17B. It says that an individual is deemed guilty of a misdemeanor under the following circumstances, and then it goes on to list those circumstances. And one of those circumstances is where? When the court grants probation to a defendant without imposition of sentence. So that is one of the criterias upon which the matter would be deemed a misdemeanor. You would agree, though, that in that case no judgment is entered? I believe that once the criminal court imposes probation and also imposes any punishment, that that, in fact, is a judgment. In Robinson, it refers to a judgment of conviction. If that's true, counsel, then doesn't that make No. 1 superfluous? We don't need either No. 1 or No. 3. If No. 3, when the court grants probation, that is also a judgment. I believe it's slightly untrue, but I believe the language of 17B1 and the initial phrase in 17B3 have the same result. So what does the phrase, and at the time of granting probation, relate to in B3? If we go back to the beginning of 17B, it states in pertinent parts that such offense is a misdemeanor for all purposes. Then we go to 17, then we go to 3, when the court grants probation to defendant without imposition of sentence at the time of granting probation. No, but it doesn't say at the time. It says, and at the time of granting probation, comma, and then it goes on to the ORs. What I'm having trouble with is you leave a dangling phrase there, so that phrase either has to attach to when the court grants probation or it has to attach to the ORs. So which is it from a sentence structure point of view? The statute 17B3 is slightly unclear as to whether or not the and attaches to the language after the OR. I think the logical reading of 17B3 would be that the first phrase before the OR is one of the circumstances upon which a matter would be deemed a misdemeanor. And then after the OR, that's another upon a declaration of a defendant it becomes a misdemeanor. Well, the fact that it's a misdemeanor, does that follow from that, that the offense is not one involving moral turpitude? That's a distinct argument in that whether or not the offense involves moral turpitude is not based on whether or not it's a felony or misdemeanor. Whether or not the offense involves moral turpitude is whether or not it is an offense which involves a depravity, typical language of moral turpitude, fraud or some sort of malicious intent sufficient to constitute a crime involving moral turpitude. Is this not a crime of moral turpitude? I'm saying it's categorically not a crime of moral turpitude in that, for example, an individual can be convicted of a crime involved I'm sorry, assault with a deadly weapon, whereupon he unlawfully touches another individual with a deadly weapon such as a fist, such as a bat, or such as any instrument the court considers a deadly weapon. What's critical is that there is no requirement of that unlawful touching that it involves It doesn't have to be a touching to be an assault. It only has to be a threat. That's where the intent element as to whether or not it requires some sort of depravity, requires an intent that's sufficient for a crime involving moral turpitude. That's not categorically so in these types of crimes. There's a broad range of conduct which a person can be convicted of a crime. So you're saying if, instead of, I think Briscoe was the guy that she shot a couple of times, you're saying if she hadn't shot him, if what she'd done is hold the gun up against him and say, you cut that out, that would be a crime of moral turpitude. But being a few feet away from her and shooting him a couple of times, that's not a crime of moral turpitude. Well, not looking at the facts specifically, underlying facts specifically of this case, the immigration courts are required just to look at the conviction documents and to look at whether or not the government, whether or not the Department of Homeland Security has submitted sufficient evidence, clear and unequivocal evidence, that it was a crime not involving moral turpitude. And just by presenting the conviction. I'm not sure of that because of the or in Section 8 U.S.C. 1182A2A. It looks like the acts are an alternative to the judgment. Your Honor, apart from whether or not this matter involves a crime of moral turpitude, if in fact the defendant was, I'm sorry, the appellant was convicted of a misdemeanor, that would have been eligible for the petty crime offense exception. And I believe that is the gravamen of the issue here is whether or not the immigration court allows, allows the respondent at that instance to see whether or not this was a crime involving moral turpitude, whether the government had met its burden. Moreover, the government had, even if it was deemed that this was a crime involving moral turpitude, because this was a misdemeanor, Mrs. Manbreno was eligible for the petty crime offense exception, which was not provided for her in that instance because this was a misdemeanor. Moreover, the fact, the cases in which define what is a misdemeanor, they're very, they're distinguishable. Robson, United States v. Robson is distinguishable from the facts in our situation because Distinguishable or do we have to overrule it? I thought you were arguing earlier in response to my question that it stands in the way and the way to resolve it is for us to simply declare it overruled. Factually, Robson is distinguishable from circumstances and Robson is incorrect as well on both points. It's distinguishable in that Robson, although the punishment was similar during the probationary period, the punishment was revoked and the court reinstated another punishment, which isn't clear from the record whether or not that subsequent punishment was a misdemeanor punishment or a felony punishment. As far as Robson being incorrect, in that Robson is requiring a judgment of conviction that's inconsistent with the statute because in the statute there's no requirement of a judgment of conviction. In fact, if there was a requirement of a judgment of conviction, what we would have is we would have individuals similar to the appellant in this situation, we would have individuals who would never stand formally convicted because once the probation is granted, once the punishment in county jail is granted, and also once the suspended sentence is granted, if there's no subsequent act in the criminal court, this person would stand in limbo. This person wouldn't be convicted of a felony or a misdemeanor. When I did criminal defense, that was the idea of an SIS, a suspended imposition of sentence. You never get to the last shoe to drop that enables a judgment to be rendered. So if the defendant behaves himself during the probation, no conviction. That creates an issue in immigration court because in order to find someone removable for the conviction of a crime, the definition of a crime in part is that an individual is responsible for the conduct as outlined in the statute. But in order for it to be a crime, in California there are only three types of crimes. A crime is a matter that is an infraction, a misdemeanor, or a felony. If it's none of those, if it meets none of those definitions, then it's not technically a crime. And these offenses where someone is given an imposition of sentence, I'm sorry, a suspended sentence in probation, if there's never any final adjudication of this matter, then the immigration court wouldn't be able to sustain removability because the immigration courts wouldn't be able to point to whether or not this individual was convicted of a crime wherein it was either an infraction, a misdemeanor, or a felony. They would be in this limbo. What was the status of the conviction at the time of the deportation? At the time of the removal order, Mrs. Merano completed her probationary period, and she never went back to the criminal courts and had it declared a misdemeanor. However, the punishment that was imposed by the criminal court meets the definition of a misdemeanor. She had completed her probation. Yes. So it's distinguishable from that circumstance in Robinson whereupon that probation was revoked. After she served her probation, was she precluded from going back and asking the superior courts to declare it a misdemeanor? She wasn't precluded from going back. She could have gone back. She could have gone back. Could she go back today? Yes, she could. And actually, that is occurring. She's going back to have it declared a misdemeanor, but that hasn't been adjudicated by the criminal courts. Well, don't you just file an application? Yes. So how is it adjudicated? Well, the courts haven't declared it to be a misdemeanor, but our position is that in that she was given this punishment. Have they acted on it at all? They haven't acted on it at all because it's a recent petition. When did you file it? I didn't file it. Another attorney filed it, but it was filed within the last month or two, I believe. Would that be with this case? If it's deemed, depending on the determination of if it's declared a misdemeanor, I believe that this court issue that's in this case is that when the punishment, I think that's the key language. Why wouldn't we just stop everything? For your client's sake, why wouldn't we just stop everything? If she gets it or she doesn't, then we don't need to resolve any huge legal issues. Yes, yes. If she gets it, that was the intent of the party, that she would go back and try to have this declared a misdemeanor so that. . . The lower court, the state courts, changed their mind about what the nature of the conviction was, wouldn't it? Yes, and the issue would renew itself in that now it would be deemed a misdemeanor. Yes, but you'd be in the position of coming back to this court and asking us, for example, to potentially to recall a mandate that it issued. Yes, Your Honor. Well, let me ask you this. Aren't those . . . isn't that relief where you've asked that it be declared a misdemeanor? Isn't that pretty routine? I mean, why is it taking this long? Don't they just walk those things through? I believe so. Bobby, don't you know? When you file a 17B motion and the criminal courts make a ruling on your 17B motion, it's just that in this instance that hasn't occurred. Well, have you got a hearing date? No, Your Honor. I might call the clerk over there. Someone would have a hearing date. I'm serious. Yes, I understand. If the criminal courts elect to declare this a misdemeanor, this issue will become moot. That, once this is said, becomes a calendar file. Don't you think that's the kind of thing that might be helpful for the in-bank panel to know in advance that there's a pending motion to declare this a misdemeanor, which would moot the entire case? Respectfully, yes, I do, Your Honor. But you weren't the . . . as I understand it, you weren't the attorney that filed that petition. No. But you're interested in how it comes out? I'm very interested in how it comes out. I still believe that there's an important . . . there's another important issue here. Well, I know there are lots of important issues in this country today, but if this case is moot, we're not going to decide them. Well, that's okay, too. Have you been . . . That's okay. Have you been . . . you haven't talked to this other attorney about what's happening? As far as . . . I spent a few years on the Superior Court in Los Angeles, and I always thought that, you know, if you gave them a sentence and it was an imprisonment and it was less than a year, it was a misdemeanor. That's how . . . That's what I always thought. That's how . . . And then I also understand that you just fill out this form, and you file with the court, and it sort of goes through routinely. But I don't know. You know, I've been away from there for a long, long, long time, before you were born. So they may have changed that. Was anybody representing Ms. Membreno in the deportation . . . in the removal proceeding? Yes, Your Honor. That was another attorney by the name of Robert Burke. I began to assist Ms. Membreno on the motion to reopen and the subsequent appeals to this court, arguing the issue of whether or not this was, in fact, a misdemeanor or a felony. Well, can't you give us the file number? We'll have somebody call and find out where it is. It shouldn't be that hard. I mean, there's a phone right here, you know. I could do that, Your Honor. Well, maybe you should. Maybe. Okay. Are there any further questions? No. All right. You have 30 seconds left to come back to us after the government will be made and it is. Call, please. Thank you. Good afternoon. I'm John Andre for the Respondent. I'm hoping that I can resolve the mootness question and also simplify the discussion at the same time. In order for the court to determine whether or not Ms. Membreno qualifies for the Fetty offense exception, all that is necessary is to determine what is the maximum possible sentence that she could have received for her violation of California Penal Code Section 245A2. The maximum possible sentence that she could receive is four years in state prison. And to reiterate that point, I'd like to refer the court. You're saying that if the court had declared this a misdemeanor, that would not have made any difference because she could have received a four-year sentence? Yes, Your Honor. Where are you getting this? This is a government position that we explained in the opening brief, page 10 and 11, and we also took this position before the panel on page 12. What case authority are you relying upon to support your position? No case authority in the Ninth Circuit at this point. We're just relying on the pure language of the statute. Any case authority anywhere? Not on this particular issue, but the clear language of the statute of the Fetty offense exception makes no distinction between misdemeanors and felonies. What about California cases? Are there any California cases on this? No, because this is a question involving removability on the Fetty offense.  The Wobbler situation is dealt with. The Fetty case is dealt with in the California State cases, but there's no, clearly no California cases on the definition of what meets the definition of a ---- But the question was, is this unique to California, or does it arise in other States? Other States have similar kind of statutes. Arizona has a couple of Wobbler statutes, I believe, and I'm not aware of any other States that do not. So your position is that there is no such thing for your purposes as a Wobbler. A statute that says it could be a felony or it could be a misdemeanor is a statute that would necessarily have a sentence of several years. And we base that on the plain language of the statute, and in that regard, the government disagrees with the analysis in Garcia-Lopez. And Garcia-Lopez, in our view, is incorrect to the extent that it said that it was insignificant whatsoever to the designation of the Wobbler to be a misdemeanor when the defendant finished their probationary sentence. So our position, therefore, is that Garcia-Lopez was incorrectly decided. Well, if you go back, just going back to the language of the statute, the critical language is the crime of which she was convicted. So you're saying that the categorization of crime as a felony or misdemeanor is irrelevant, and you simply look to the statutory map. The statute, the plain statute is a petty offense exception. It says the maximum penalty possible for the crime of which the alien was convicted in parents or which the alien admits having committed or of which the acts that the alien admits having committed constituted the essential elements did not exceed imprisonment for more than one year and the alien was convicted of such, if the alien was convicted of such crime, was not sentenced to a term of imprisonment in excess of six months. We're not concerned here with the six-month provision. We're only concerned with the one year. We're just concerned with what's the meaning of the word crime in the statute. That's true. Counsel, I'm having trouble. Let's assume that this argument of yours fails and that we decide that there is such a thing as a wobbler for purposes of the immigration law and that this was converted to a misdemeanor by the state, that if it were converted, that then it would not it would be qualified for an exception. Assuming that, that there is such a thing as a wobbler and that a wobbler could qualify for an exception, if that's true and the court were now to declare it a wobbler and say it's now a misdemeanor, what would your position be? Our position would be that it does not move the case because the court is reviewing removal order. The removal order was based on circumstances that existed at the time of the removal order. In order for her to come back, let's say that she goes back in the state court, she gets a designation under 17b-3 that it's a misdemeanor. She would have to reopen her immigration proceedings and get the board or the immigration judge to terminate proceedings based on the nature of her crime having changed to a misdemeanor. Assuming that the 17b-3 analysis applies here and we, I would rather doubt from personal experience that DHS government would agree to a reopening of her immigration proceedings for that reason and she is beyond the statutory time limits for reopening. So we don't, we don't believe that the, that would make any difference in this case. It would not move the case. Counsel, I'm having trouble following your analysis of 11a-82a-2. I just called it. 2, the exception. Yeah, I saw it. My problem is that Robinson looks to me like a correct analysis of how the California procedure works. When you get a suspended imposition of sentence in California, there's no judgment of conviction. It seems like your argument works from the assumption that she has a judgment of conviction. Are you saying she has a judgment of conviction or not? We're not, for our purposes, I'm not interpreting what the phrase judgment of conviction or judgment means with respect to California Penal Code section 17b. Well, let's not. Let's decide what it means in respect to 1182. It says the maximum penalty possible for the crime of which the alien was convicted. Was she convicted? Robinson seems to say no. The way you determine whether somebody's been convicted of a crime in state court, I would think would require you to look to whether the state court regarded them as having been convicted. Is there a way around that except for these alternatives about the alien admitting committing the crime or the alien admitting acts which constitute the crime? Yes, there is an alternative, Your Honor. The alternative is the definition of conviction under the Immigration Nationality Act. That's section 101A. That definition says that for purposes of this act, for purposes of this set, meaning the Immigration Nationality Act, a conviction occurs even if a judgment or some offense, criminal offense, is expunged or later removed for some rehabilitative purpose or some other reason. Does it define conviction or does it just say that expungement doesn't wipe it out? It does both. Okay. Read me the language defining conviction again. I know it says for purposes of conviction and expungement doesn't eliminate it. If you'll excuse me just a minute. The term conviction means with respect to an alien, a formal judgment of guilt of the alien entered by a court or if adjudication of guilt has been withheld where I, a judge or jury, has found the alien guilty or the alien has entered a plea of guilty or no low contundra or has admitted sufficient facts to warrant a finding of guilt and the judge has ordered some form of punishment, penalty or restraint on the alien's liberty to be imposed. Okay. So what you get there is you use the federal definition and it's a conviction for that purpose because the judge found the person guilty and imposed punishment even though the judge didn't impose sentence. Yes, Your Honor. Now, once you get to imposing punishment without sentence, how do you keep from looking at the California Wobbler statute? The imposition of a suspended sentence with probation and county jail as a condition of the first 180 days in county jail as a condition of probation is a restraint of liberty and it therefore meets the definition of this definition of conviction. Now, just to reiterate the point regarding what the maximum penalty in Ms. Membrano's offense was, I'd like to refer the Court to the administrative record. This is a plea agreement. On page 155 of the administrative record, beginning about the middle of the page, Ms. Fisher is the state prosecuting attorney. Down on 155, Ms. Membrano, this is Ms. Fisher saying, Ms. Membrano, you will be pleading guilty to count one of the information. That's felony assault with a violation of penal code section 245A2. The maximum possible penalty is four years in state prison. The agreement that has been reached in that is that you will also be placed on five years of formal probation. This was later reduced to three years. You will be sentenced to 180 days in the county jail as a condition of probation, and if you qualify, you will do the PAWS program, which is community service program. If you violate any of the terms and conditions of probation, including what I anticipate will be a stay-away order as to the victims, among other terms and conditions, you will be brought back into court and you could be sentenced up to four years in state prison. Do you understand what I've just said? She responds, yes. Now, my point in raising that is just to make clear that there's no confusion here on her part as far as what penalty, what maximum penalty she faced. There's no confusion that she faced four years in prison. Also, to add to that point, go beyond the actual plea agreement, go beyond the actual conviction of the offense, and look to what she actually received, what sentence she received. She received a suspended sentence and three years probation, conditioned on 180 days in county jail. Now, under this Court's precedent in Ariana Torres, just receiving the three years of probation in and of itself constitutes a maximum possible penalty of three years in state prison, and the reason for that is that probation, of course, can be provoked. And even if she gets probation, even if she doesn't go to jail right away, there is always that possibility hanging over her head. Well, there was that possibility up to a certain point. When she completed the sentence, there no longer was that possibility. That's correct. So if we're talking about what was theoretically possible, it was at one time. But at the end of her sentence, it was not possible, and she did not receive any sentence. The determination of what is possible obviously should and does occur at the time of conviction. And what happens afterward is irrelevant, at least with respect to the petty offense exception. It may be relevant in other contexts, in the state law context, or perhaps for expungement purposes, but it's irrelevant with respect to the petty offense exception. That exception makes no mention of whether something is a felony, whether it's a misdemeanor or whether it's a robbery. Now, how do you get moral turpitude on all of this? Well, this Court actually in Gonzales v. Barber held that. We held once it was, once it wasn't. How do you determine whether a felony, say a felony, is a crime with moral turpitude? What felonies are not crimes of moral turpitude in your view? Your Honor, I don't think I could enumerate the felonies. Can you give me a few? Well, the crimes that involve a certain depravity or a deviation from certain standards of conduct, certain theft offenses are all crimes involving moral turpitude. Well, give us one that isn't, would you? What, a felony that is not a crime involving moral turpitude? Yeah. You know, I know that there are some, but I can't think of any right now. I'd be happy to research. Well, have you ever looked at Witkin on this? No, I have not. No. How about Aller-Kahn on criminal law? Not on this particular question, no. Well, would you say it would be an act of baseness, vileness, or depravity? Would that be an act of moral turpitude? It's an inordinate definition. It's a definition that has been developed by the Board and also by the courts, and the courts and the Board have agreed that crime involved a deadly weapon is. . . Well, some courts may have agreed. Our court said yes once, no once, and that's what we're trying to decide now. Obviously, it would seem that it's not every felony or you just say if you're guilty of a felony. Instead, you say if you're guilty of a crime involving moral turpitude. Now, how are we supposed to determine which felonies are crimes involving moral turpitude? You say, well, if there's baseness, vileness, or depravity, which felonies involve baseness, vileness, and depravity, and which don't? Again, Your Honor, the determination is very specific with respect to different crimes, and I just. . . You're supposed to help us write our opinion here. I honestly, I don't know. Well, how about misdemeanors? Are misdemeanors, they can be crimes of moral turpitude? That's correct. There are some that can be crimes of moral turpitude. Sexual abuse of a minor, for instance, could be a misdemeanor of a crime. What did you say? Sexual abuse of a minor could be a crime involving moral turpitude. I can't hear you. Sexual abuse of a minor could be a misdemeanor and a crime involving moral turpitude. Also, certain theft offenses, certain assault offenses could be misdemeanors, and crimes involving moral turpitude, certain theft offenses could be. Could I ask you a question? I'm getting away a little bit from the undefined area of moral turpitude. Is it your position that the Petitioner here raised the issue of whether 245A2 was a crime of moral turpitude in the BIA? Was that an exhaustive claim? The original, the issue here is I think that he did raise it in his initial appeal to the Board. He raised the argument that counsel has referred to here with respect to whether or not it's a categorical, a categorical crime involving moral turpitude. He raised it in his initial appeal. However, he did not seek review of that decision. What he did seek review of was the Board's denial of his motion to reopen. His motion to reopen to the Board did not raise this CIMT issue at all. All he raised in his motion to reopen was the question of whether a wobbler is a misdemeanor. So in that respect, we would take the position that the Court – the issue really is not properly before the Court under Stone v. INS. He did not petition to review the Board decision to address this issue. Let me go back to the wobbler, because I want to make sure I understand your position. Your position is that a person who is charged with a crime that could be a felony or a misdemeanor is – and is given a sentence like this, which says that, in effect, if you're a good person and you don't violate your probation for three years, that you will be guilty only of a misdemeanor. You go and get a certificate that you've only had a misdemeanor. That that person, from the moment that he is convicted and faces a possible sentence as a – as a felon, is – is always regarded as a felon for purposes of immigration law, so that if he has been admitted, if he has entered illegally, he will always be an aggravated felon, even though he's a good person and behaves himself and – and serves his probation well. Is that – is that right? I think you're referring to – did you refer to an aggravated felon or to a crime before? I'm sorry. I'm sorry. I used it wrong. Because I didn't see an unlawful aggravated felon. Whether or not they qualify for the – For the petty – petty offense. He will never be able to qualify for the petty offense. Even if he serves out his probation admirably, he's stuck because – because he could be faced with a punishment as a felon. Is that the position? If, in fact, the maximum possible was more than one year, yes. Yes. Does that make sense – is that good policy? It's good – it's – it's good policy in the sense that these are – these are serious crimes. Mr. Membrano's crime is a serious crime. It's a crime that's up to four years. So I – my personal opinion is it makes very good policy sense. In Congress, I think if Congress wanted to make an exception, you know – Wouldn't we want to encourage people to – to serve their probation? Oh, absolutely. And not to – I mean, I just – I guess – Well, one way – I guess I see what you're saying. The – one way that both the government and the petitioner could have their way in this kind of a situation is if their crime was committed and – and the conviction occurred before they were placed in proceedings, and if they were given probation, they would – they would be encouraged to – well, I take that back. That's only under a 17B analysis. No. At – I think with respect to the – the question of whether or not they could ever apply – they could ever qualify for the petty exception, it would not matter whether they completed their probation. Yeah. Going back to the crime of moral turpitude issue, does it make any difference if this is just a general – a general intent crime? No, it doesn't. And the case law is fairly consistent on – it's not a crime involving moral turpitude. It does not have to be a specific intent. In fact, in the board's decision in In re Medina involving – which I believe we've cited in the brief involving assault with a deadly weapon, it even includes recklessness as a potential element which would establish a crime involving moral turpitude. And in this situation, assuming arguendo that Ms. Membrano did not have specific intent to injure somebody, that's just an assumption for argument purposes, even if she was considered to have acted recklessly under the board's precedent in – in – in re Medina, she would be – she would be guilty of a crime involving moral turpitude. So your – your position is that a – a reckless act can constitute a crime of moral turpitude and thus a reckless threat – a statute that prohibits reckless threats prohibits crimes of moral turpitude? Can you ask the question one more time, sir? Well, I'm saying take a prepositive statute that makes it an offense to commit reckless threats, a physical assault, a threat, done recklessly, that that would constitute a crime of moral turpitude. Well, again – It would be a base, vile, whatever the – Yeah. General other elements of crime involving moral turpitude are met, the baseness and vileness and the – Of course, we – we don't know what – what – how we determine whether it's base or vile, except by deciding that that is the kind of act that's so offensive and reckless – reckless threat would fall within that category, in your view, that it would be so base and vile that unlike other felonies, it would constitute an act of moral turpitude. I'm just on the issue of threats themselves. I don't want to overcommit myself because I'm not sure what, you know, what the courts have held on whether or not, you know, a threat is a crime involving moral turpitude. Counsel, go ahead. I recall an area where the law is fairly well developed on this, on professional licensure. Many states have professional licensing statutes that exclude a person from a license unless special leave is granted if they've committed any felony or misdemeanor involving moral turpitude. And the way that the misdemeanor involving moral turpitude is usually interpreted, all the moral turpitude crimes, they either involve sex or they involve dishonesty. So, shoplifting or indecent exposure, yes. Assault and battery, no. Now, I look at this statute, it's not quite like that. Some felonies obviously do not count, and some do. In order for the felony to count against the person, it has to be a crime involving moral turpitude or a controlled substance crime or multiple convictions or terrorism or a couple of others. That has to mean that there are a bunch of felonies that are not crimes of moral turpitude. And I'm wondering why we shouldn't just use the traditional sex or dishonesty categories. I can't understand what base and vile means except that they really disgust me. It seems like kind of a meaningless subjective standard. Well, it has its roots in common law, as many crimes do. It covers many crimes that obviously aren't in the category of sexuality and sexual offenses. Give me a couple of for instances. Well, the situation today in this case, the weapons offense. Again, as far as a category. I find myself yet again in agreement with my colleague Judge Reinhart. We said yes once, we said no once, and now we have to decide. I don't know if that's helpful. As Judge Kleinfeld said, there are two types of crimes that constitute moral turpitude. And what we have said in the Ninth Circuit in the year 2005 was that there are basically two types. Those involving fraud and those involving grave acts of baseness or depravity. And those are generally, as Judge Kleinfeld said, the sex offenses, moral offenses, things that shock the conscience, as one of the cases says. But the other category, the dishonesty or fraud, the kind that prevent you from becoming a lawyer, like lying to a court or doing anything like that. But the second category, because this is not a dishonesty or fraud case, the second category, we have said, are those cases involving grave acts of baseness or depravity. And that's what we're trying to determine. Is a categorical offense that's a threat of violence, is that the kind of grave act of baseness or depravity that we're talking about when we say moral turpitude, or is it more like sexual misconduct? Well, Your Honor, again, I would just say that both are covered. There's not one specific definition of crime involving moral turpitude. There are a number of them that have been developed in the case law. And I see that I'm not doing a very good job of addressing this issue, and I certainly would welcome the opportunity to brief it further if the Court does. We've had a lot of briefs on this case. We've had about three or four rounds. I'm not on this subject, and one of the reasons was because of the issue of the jurisdiction issue, and I quite frankly didn't believe that the issue would be a prominent case. To that extent, I may be incorrect. And if so, I would welcome the opportunity to brief it further. But our position, however, we do not agree with the proposition that there actually is a direct conflict between Carr v. INS and Gonzalez v. Barber, because Carr v. INS was not specifically addressing the individual's removability on account of a crime involving moral turpitude. It was addressing whether or not they could potentially be eligible for a state law expungement, and it's possible. But it said it wasn't a crime of moral turpitude. Didn't Carr say that it's not a crime of moral turpitude? It did say that, however. Judge Wallace said that. Without any elaboration or extensive discussion. And I think it's also noteworthy that Carr v. INS did not make any mention of Gonzalez v. Barber. Okay. Thank you. Thank you. Time has expired. Let's go. Okay. Mr. Adams. I'm 17. We'll give you 30. The government's position concerning whether or not all wobblers, those offenses that can be punished as a felony or a misdemeanor, all wobblers wouldn't qualify for the petty offense exception is contrary to the definition of felonies and definitions of misdemeanors. The fact that in a particular instance a criminal court looks to the underlying circumstances and deems whether or not in this particular case this matter will be subject to a punishment that's a misdemeanor punishment or subject to a punishment that's a felony punishment, it is upon that determination that the petty offense exception attaches to. It attaches to once the criminal courts deem that this is going to be treated as a misdemeanor or deem that this offense is going to be treated as a felony, then if it's treated as a misdemeanor, then that person would, of course, be eligible for the petty offense exception. Not following that logic creates an equal protection argument, because what we would have is that we would have individuals who would be responsible for the same conduct outside of the California jurisdiction, because we're talking about removal. We would have individuals responsible for the same conduct. And in California, that misdemeanor conduct that falls under the purview of a wobbler, even if the courts determine that it's a misdemeanor conduct, and then someone, for example, in Kentucky who has the same conduct, simply because in California it's deemed a wobbler, one person would be eligible for the petty offense exception and the other person wouldn't be eligible. We understand your argument. You've more than used your time. Thank you, counsel. The case just argued. It's a decision, at least for now. And the court stands adjourned. Thank you.
judges: Schroeder, Pregerson, Reinhardt, Kleinfeld, McKeown, Gould, Paez, Tallman, Rawlinson, Bybee, Bea